## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| CANDAMEIA BENDER, | |
| Plaintiff, | |
| v. | Civil Action No.: |
| | 5:19-CV-00355 |
| MARK T. ESPER, as Secretary of the Department of Defense., | |
| Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW, Plaintiff Candameia Bender, and brings this action against Defendant Mark T. Esper, as Secretary of the Department of Defense, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*, and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and respectfully shows the Court as follows:

### JURISDICTION AND VENUE

1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §§ 1331 & 1343 and the enforcement provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 and the Family Medical Leave Act, 29 U.S.C. § 2617.

2.

Venue is proper in this judicial district because Plaintiff was employed, and the events underlying this action, occurred in Houston County, Georgia, which is located in this judicial district, pursuant to 28 U.S.C. § 1391, 42 U.S.C. § 2000e-5(f)(3), and 5 U.S.C. § 7703(b)(2).

### PARTIES

3.

Plaintiff Candameia Bender (hereinafter, "Plaintiff" or "Bender") is a citizen of the United States and a resident of Georgia. At all times relevant to this suit, Ms. Bender was employed with the Department of Defense in its Defense Commissary Agency. Ms. Bender is a covered, non-exempt employee under all laws referenced herein.

4.

Defendant Mark T. Esper, as Secretary of the Department of Defense, (hereinafter, "Defendant") may be served by delivering or sending a copy of the Summons and Complaint to the United States Attorney for the Middle District of Georgia, with copies to the Attorney General of the United States and the General Counsel of the Department of Defense. Fed. R. Civ. P. 4(i); 32 C.F.R. §§ 257.4-257.5.

5.

Defendant is a covered entity and employer within the meaning of Title VII of the Civil Rights Act, the Family Medical Leave Act, and the Fair Labor Standards Act.

**STATEMENT OF FACTS**

6.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 5, as if the same were set forth herein.

7.

Ms. Bender has been employed with Defendant in its Defense Commissary Agency for approximately five years. In September 2017, Ms. Bender was promoted and transferred to the Commissary at Robins Air Force Base in Houston County, Georgia, as Supervisory Store Associate.

8.

In her position as Supervisory Store Associate, Ms. Bender is responsible for all of the cashiers and the front end of the Commissary for the Air Force Base.

9.

At all relevant times Ms. Bender's employment performance has been exemplary.

10.

As a result of her performance, Ms. Bender received bonuses, a passion award, and excellent appraisals in November 2017 and March 2018.

11.

In December 2017, Richard Martinez (hereinafter, "Martinez") was hired as Customer Service Manager.

12.

When Mr. Martinez began work, he was immediately aggressive and rude to Ms. Bender and other female employees.

13.

Mr. Martinez would frequently ask Ms. Bender about her age, about her need to visit the Veterans Administration hospital (hereinafter, "VA hospital"), and her past military service.

14.

Mr. Martinez frequently smelled of alcohol while at work.

15.

Before Mr. Martinez began work at the Commissary, Ms. Bender had a regular day schedule that allowed her to ensure necessary childcare for her young daughter.

16.

However, after Mr. Martinez's arrival, Mr. Martinez would frequently and intentionally schedule Ms. Bender to work the night shift.

17.

On or about December 7, 2017, Ms. Bender told Mr. Martinez that she had to be available to care for her daughter. In response, Mr. Martinez told Ms. Bender that his wife worked full-time with children and that Ms. Bender could manage. As a result, Mr. Martinez refused to schedule Ms. Bender to work during the day.

18.

On multiple occasions, Mr. Martinez changed the key codes to the office doors, locking Ms. Bender out of her own office.  At times would barricade the doors of their shared office space while he slept on duty.

19.

Ms. Bender reported Mr. Martinez's inappropriate conduct to Second Line Supervisor Jack Verling within the first 3 months of Mr. Martinez's promotion.

20.

Sometime in early 2018, Mr. Martinez told Ms. Bender that she would now be required to perform Mr. Martinez's job duties in addition to her own.

21.

Approximately one week later, Mr. Martinez called Ms. Bender into the Store Director's office and told Ms. Bender that he was displeased that she refused to do his job and he demanded that Ms. Bender voluntarily resign from her position as Supervisory Store Associate.

22.

During this meeting, Mr. Martinez laughed when he heard two other employees who were present make disparaging comments to Ms. Bender such as calling her "Candyland" and telling Ms. Bender to "go back where [she] came from."

23.

On or about February 2018, Ms. Bender had to remind Mr. Martinez that he could not schedule her work hours that would conflict with her VA medical appointments for her service-related disability. Mr. Martinez stated in response, "I am the boss and I don't care how the union feels and I can change whatever rules I want. Jack [Verling], Max [Kraftchick] and Susan [Edmonds] said I can do what I want because they have my back."

24.

On March 5, 2018, Ms. Bender filed an EEO complaint and complained directly to Mr. Verling that Mr. Martinez was creating a hostile work environment.

25.

As a result of the hostile work environment, Ms. Bender began to suffer extreme anxiety and headaches, which would be later diagnosed in December 2018 as Anxiety and Major Depressive Disorders.

26.

Mr. Martinez learned of the Ms. Bender's complaints against him and increased his hostility to Ms. Bender by harassing her about her clothing, her hair that was styled in braids, and her age. On one occasion, Mr. Martinez said that Ms. Bender looked like Pocahontas.

27.

In response, Ms. Bender informed Mr. Martinez that the comments made her uncomfortable.

28.

In April 2018, Mr. Martinez intentionally and maliciously changed Ms. Bender's schedule without notice to her, scheduling her to work the closing shift. Mr. Martinez also scheduled employees so that Ms. Bender's area was consistently understaffed and scheduled Ms. Bender for hours that would not allow her to provide childcare for her daughter.

29.

On or around April 4, 2018, one of Ms. Bender's subordinate employees requested a union representative due to her own scheduling problems that were being created by Mr. Martinez.

30.

While waiting for the union representative to arrive, Mr. Martinez became physically aggressive, yelled and cursed at Ms. Bender, punched walls, punched his hands together, and paced around the office.

31.

When the union representative arrived, Mr. Martinez stated "I am not dealing with this union shit. I am the boss and you are going to do the schedules like I tell you to do it and all of you will be targets for my gun club, and I will talk to Jack [Verling], Max [Kraftchick], and Susan [Edmonds] about this shit."

32.

During this incident, Mr. Martinez also stated to Ms. Bender, "Fuck this shit you can have this shit." While intimidatingly punching his open palm with his fist in front of Ms. Bender.

33.

During this incident, employees called the Military Police, because they feared for their safety because of Mr. Martinez.

34.

On another occasion while Ms. Bender was off base for training, one of Ms. Bender's subordinate employees called the Military Police because she felt physically threatened by Mr. Martinez and Mr. Verling during a meeting about scheduling.

35.

In March 2018, Ms. Bender and a coworker saw Mr. Martinez consuming a pitcher of beer and shots of liquor and watching a March Madness basketball game while out for lunch during the middle of his shift.

36.

Later that day, Mr. Martinez returned to work where he drunkenly and belligerently cursed at employees, grabbed his genitals, and made inappropriate comments to the female employees, such as calling them "mija," "sweetheart," and "baby."

37.

During this incident Mr. Martinez told one female employee that he would "teach her how to drive stick shift real good" in a sexually suggestive manner.

38.

On or about March 11, 2018, Mr. Martinez told Ms. Bender she could not use sick leave for a day to attend her VA medical appointments on a day that Ms. Edmonds had already approved leave, stating he "would not approve it depending on how [he felt] that day…"

39.

On March 21, 2018, Ms. Bender and Vice President Mike Ferguson, Executive Vice President Henry Brown, and the Stewardess Angela Simmons all from the Labor Union attended a meeting with Store Director Edmonds concerning the complaints against Mr. Martinez. Ms. Edmonds response was that she was going on vacation and would handle it later.

40.

On May 24, 2018, Mr. Martinez stated that he refused to sign Ms. Bender's leave slips so that she could go to the VA hospital, saying that Ms. Bender needed Store Director Edmonds' approval. When Ms. Bender sought Ms. Edmonds' approval, Ms. Edmonds stated "I refuse to sign your leave slips because, in my opinion, you should be at work." Both Mr. Martinez and Ms. Edmonds continued to refuse to approve the leave slips preventing Ms. Bender from attending her VA medical appointments or causing her to be marked AWOL.

41.

On or about July 10, 2018, Mr. Martinez got Ms. Bender's attention by saying "hey, hey Candy, look!" He then proceeded to prop one leg up on a bench and then began to scratch his genital area with his hands in his pants while letting out a belching and coughing noise.

42.

On or about July 18, 2018, Ms. Bender witnessed Mr. Martinez touch another female employee's breasts and thigh in a sexual manner.

43.

All of Mr. Martinez's inappropriate acts were reported to Deputy Store Director Verling, and Store Director Edmonds, but it does not appear that any corrective action was ever taken.

44.

After this event, Mr. Martinez's inappropriate behavior continued and escalated, and Ms. Bender's anxiety attacks became more frequent and severe. As a result, Ms. Bender began to have trouble sleeping and eating.

45.

Subsequently, on several occasions Mr. Martinez intentionally excluded Ms. Bender from meetings that she was required to attend as a part of her regular job duties.

46.

Mr. Martinez denied several of Ms. Bender's timely requests for leave to attend VA medical appointments, and he would mark her as AWOL when she did not appear for duty because she was at such appointments.

47.

On August 14, 2018, Mr. Martinez approved Ms. Bender's request for sick leave for a VA medical appointment. When Ms. Bender returned, she saw that she had been marked as AWOL by Store Director Edmonds. When Ms. Bender asked Ms. Edmonds to fix it Ms. Edmonds stated, "I will not change it. As far as I am concerned, you should be at work"

48.

On August 15, 2018, Mr. Martinez approved Ms. Bender's request for sick leave, but then he intentionally marked her as AWOL when she did not appear for duty.

49.

On several occasions, Mr. Martinez retroactively altered Ms. Bender's time and attendance sheets by marking her as absent on days she was on duty in order to take away hours that she had worked.

50.

After Ms. Bender complained of the falsification of her timesheets, Mr. Martinez apologized sarcastically and walked away laughing. This was done in the presence of the Store Manager David Moore.

51.

Mr. Martinez changed Ms. Bender's assignment on several occasions so that she was working 48 to 50 hours per week.

52.

Similarly, Store Director Edmonds would call Ms. Bender after Ms. Bender had completed her shift for the day, and demand that Ms. Bender come back to work, even though Ms. Edmonds had not approved Ms. Bender to work overtime.

53.

However, because Ms. Bender was required to have pre-approval for overtime, she was not paid overtime because of the short notice of the change of Ms. Bender's assignments and her lack of pre-approval.

54.

Frequently, Ms. Bender was required to work extra hours because Mr. Martinez was either not present for work or because other employees refused to come to work in order to avoid Mr. Martinez. Similarly, she was not paid overtime for this work.

55.

On multiple occasions, when Ms. Bender needed to be absent from work for her own doctor's appointments at the VA hospital or for her daughter, Store Director Edmonds stated, "I will not sign any of your sick leave slips for your VA medical appointments unless you tell me

what type of medical problems you have, bring me all your doctor notes, medical records, and health condition information from the VA Medical Center."

56.

In September 2018, Ms. Bender was absent from work for three days to care for her ten-year-old daughter who had the stomach flu. On the first day of this leave, Ms. Bender sent copies of her doctor's excuses to Store Director Edmonds, to which Ms. Edmonds did not respond. Instead, Ms. Edmonds sent a group message to others in management, in which Ms. Bender was inadvertently included, stating "this must be her three-day weekend off."

57.

When Ms. Bender returned from the three days of leave, Mr. Verling asked Ms. Bender to meet with Ms. Edmonds, who then met with her handed her a demotion memorandum, advising that Ms. Bender was demoted to WG-4 status.

58.

While Ms. Bender's supervisors stated that the demotion reflected Ms. Bender's poor performance, she had just received bonuses and a passion award for exemplary work. Moreover, on her most recent appraisal, Ms. Bender had been rated "excellent."

59.

In September 2018, Ms. Bender's doctor recommended placing her on leave under the Family Medical Leave Act until December 5, 2018, for the purpose of treating her anxiety. Ms. Bender's FMLA leave was approved.

60.

Ms. Bender's doctors also recommended that she receive a reasonable accommodation that should include not allowing Ms. Bender to return to the Commissary.

61.

The Department of Defense was notified of Ms. Bender's doctors' diagnosis and their suggested accommodation and subsequently confirmed that Ms. Bender had a qualifying disability under the Americans with Disabilities Act.

62.

Ms. Bender had accrued enough paid time off for her entire FMLA leave to have been paid.

63.

However, Ms. Bender's Leave and Earnings Statements show that she received incorrect leave hours, incorrect hours paid, and incorrect gross pay while she was on FMLA leave, despite having been approved for advance sick time and having 80 hours of donated leave time from other federal employees. There were also pay periods during this time where she received no pay.

64.

While Ms. Bender was on FMLA leave, Store Director Edmonds changed Ms. Bender to part-time by submitting a form SF-50 reflecting this change.

65.

The act of changing Ms. Bender's employment status caused Ms. Bender to receive significantly less money each week and sometimes receive nothing. Moreover, the change in Ms. Bender's employment status had negative consequences to fringe benefits of her employment such as the cancellation of her medical insurance coverage.

66.

Ms. Bender discovered the change in her status when she received her Leave Earnings Statement and she contacted the Department of Defense and Defense Finance and Accounting Service to reaffirm her full-time status; however, her status was not restored until January 2019.

67.

Ms. Bender's ADA disability accommodation was approved on February 7, 2019.

68.

Despite having confirmed that Ms. Bender has an ADA disability and that she is entitled

accommodation, no action has been taken to reassign Ms. Bender away from the Commissary.

Procedural/Administrative Background

69.

On March 15, 2018, Ms. Bender filed her first EEO Complaint alleging discrimination on

the basis of race (black) and sexual harassment (female).

70.

In September 2018, Ms. Bender filed a second EEO Complaint for retaliation against her

due to filing the first EEO Complaint.

71.

An EEO Investigation took place from September 24, 2018, through February 8, 2019.

72.

The first and second EEOC Complaints were merged, and amendments were filed on

October 29, 2018, and December 6, 2018, respectively.

73.

On February 22, 2019, Ms. Bender was sent correspondence by the Defense Commissary

Agency's Equal Employment Opportunity Office stating that, if a final decision has not been

issued on her Complaint within 180 calendar days from filing, she would have the right to file a

civil action in District Court.

74.

More than 180 days have passed since Ms. Bender filed her Complaint, and no final decision has been issued.

75.

Accordingly, Ms. Bender has exhausted her administrative remedies her Formal Complaint of discrimination and retaliation in violation of Title VII of the Civil Rights Act.

76.

On March 22, 2019, Ms. Bender filed her third EEO Complaint regarding the failure to accommodate her disability in violation of the Americans with Disabilities Act.

77.

Ms. Bender intends to Amend this Complaint to include her claim for discrimination in violation of the Americans with Disabilities Act once her administrative remedies on this claim have been exhausted.

**COUNT I:**
**HARASSMENT BASED ON RACE**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**

78.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

79.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against or harass any of its employees on the basis of race. *See* 42 U.S.C. § 2000e-2(a).

80.

As alleged herein, Defendant, and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively.

81.

As alleged herein, Defendant subjected Plaintiff to harassment in the form of unwelcome verbal and physical conduct because of her race.  For example, Defendant's employees frequently commented on the style of Plaintiff's hair and clothing, called her names like Pocahontas, made racially-derogatory comments about her name, and making statements such as telling Plaintiff to "go back where [she] came from."

82.

As alleged herein, the harassment affected terms and conditions of Plaintiff's employment and had the purpose and effect of unreasonably interfering with the work environment and created an intimidating, hostile, and offensive work environment.

83.

As alleged herein, Defendant was on notice of this conduct, as evidenced by the multiple formal and informal complaints that Plaintiff, her coworkers, and representatives of the labor union made to Plaintiff's supervisors.  However, Defendant failed to take any meaningful action.

84.

The harassment experienced by Plaintiff was severe, pervasive, abusive, hostile, and unwelcome by Plaintiff and occurred because of her race.

85.

Defendant's conduct as alleged herein constitutes harassment and hostile work environment based on race in violation of Title VII.  Plaintiff will prove that Defendant's stated

reasons for its conduct were not the true reasons but, instead, were pretext to hide Defendant's discriminatory animus.

86.

Plaintiff has been injured by Defendant's discriminatory actions, including harassment and hostile work environment, and is entitled to all damages allowed under Title VII of the Civil Rights Act, including attorney's fees and costs of litigation, in an amount to be proven at trial.

<strong>COUNT II:<br/>HARASSMENT BASED ON SEX<br/>IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT</strong>

87.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

88.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against or harass any of its employees on the basis of sex.  *See* 42 U.S.C. § 2000e-2(a).

89.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively.

90.

As alleged herein, beginning in December 2017, Defendant changed and refused to reconsider Plaintiff's work schedule, preventing her from meeting her family obligations, based solely on preconceived notions about how a full-time female employee should be able to manage her family responsibilities (i.e., sex stereotyping).

91.

As alleged herein, Defendant subjected Plaintiff to harassment in the form of unwelcome verbal and physical conduct by creating a work environment in which Plaintiff's coworkers were frequently called derogatory sexual names, subjected to sexually suggestive comments, and physically harassed.  This includes the time when Plaintiff observed Richard Martinez touch a female coworker on the breasts and thighs.

92.

Moreover, Plaintiff, herself, was directly subjected to sexually inappropriate behavior by Richard Martinez, such as on July 10, 2018, Mr. Martinez intentionally got the attention of Plaintiff and proceeded to fondle his genital area once he saw the Plaintiff was looking at him.

93.

As alleged herein, the harassment affected terms and conditions of Plaintiff's employment and had the purpose and effect of unreasonably interfering with the work environment and creating an intimidating, hostile, and offensive work environment.

94.

As alleged herein, Defendant was on notice of this conduct, as evidenced by the multiple formal and informal complaints that Plaintiff, her coworkers, and representatives of the labor union made to Plaintiff's supervisors.  However, Defendant failed to take any meaningful action.

95.

The harassment experienced by Plaintiff was severe, pervasive, abusive, hostile, and unwelcome by Plaintiff and occurred because of her sex.

96.

Defendant's conduct as alleged herein constitutes harassment and hostile work environment based on sex in violation of Title VII of the Civil Rights Act.  Plaintiff will prove that Defendant's stated reasons for its conduct were not the true reasons but, instead, were pretext to hide Defendant's discriminatory animus.

97.

Plaintiff has been injured by Defendant's discriminatory actions, including harassment and hostile work environment, and is entitled to all damages allowed under Title VII, including attorney's fees and costs of litigation, in an amount to be proven at trial.

## COUNT III:
## RETALIATION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

98.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

99.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against or harass any of its employees because an employee has opposed any practice made an unlawful employment practice or because an employee has made a charge or participated in other protected activity.  *See* 42 U.S.C. § 2000e-3(a).

100.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively.  *See* 42 U.S.C. §§ 2000e & 2000e-1.

101.

Plaintiff reported the inappropriate behavior of Richard Martinez to her supervisor as early as approximately February 2018.

102.

Plaintiff filed an EEO Complaint on March 5, 2018, alleging that she was being subjected to a hostile work environment because on race and sex, and informed her supervisor that the complaint had been filed.

103.

Once the individual who was the subject of Plaintiff's complaint became aware of the complaint against him, he and Plaintiff's other supervisors subjected her to additional harassment and adverse employment actions that changed the terms and conditions of her employment.

104.

For example, the subject of the complaint would become physical and verbally aggressive to Plaintiff, Defendant would refuse to approve Plaintiff's requests for medical leave,  Defendant would exclude Plaintiff from meetings she was supposed to attend, Defendant would mark Plaintiff as "absent without leave," despite having received approval for leave, Plaintiff's time and attendance records were falsified, and Plaintiff was ultimately demoted for reasons unrelated to her performance.

105.

Defendant's conduct as alleged herein constitutes retaliation in violation of Title VII of the Civil Rights Act.  Plaintiff will prove that Defendant's stated reasons for its conduct were not the true reasons but, instead, were pretext to hide Defendant's retaliatory animus.

106.

Plaintiff has been injured by Defendant's unlawful retaliation and is entitled to all damages allowed under Title VII of the Civil Rights Act, including attorney's fees and costs of litigation, in an amount to be proven at trial.

## COUNT IV:
## FAILURE TO PAY OVERTIME
## IN VIOLATION OF FAIR LABOR STANDARDS ACT

107.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

108.

Under the Fair Labor Standards Act, an employer must pay a rate of not less than one and one-half times an employee's regular rate for any time worked in excess of forty hours.  *See* 29 U.S.C. § 203(a)(1).

109.

The Fair Labor Standards Act allows employees of a public agency to accrue and use compensatory time in lieu of receiving overtime pay. 29 C.F.R. § 553.25(a); *see also Christensen v. Harris Cnty.*, 529 U.S. 576, 582 (2000) (citing 29 U.S.C. § 207(o)(5)).

110.

Plaintiff's supervisor would frequently, and on short notice, change Plaintiff's work assignments so that she was working 48 to 50 hours per week.  Moreover, he threatened to terminate Plaintiff if she did not work the unapproved overtime that he assigned to her.

111.

On several occasions, Plaintiff's supervisor retroactively changed her time and attendance records so that they did not reflect the true amount of hours that Plaintiff worked.

112.

On other occasions, Plaintiff had to work overtime hours because Defendant was short-staffed due to the environment that her supervisor had created.

113.

However, Defendant failed to pay Plaintiff overtime for all of the hours she worked, or otherwise allow Plaintiff to accrue and use compensatory time.

114.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under the Fair Labor Standards Act, respectively. *See* 29 U.S.C. § 201(a)(1), 29 U.S.C. § 203.

115.

Defendant's conduct as alleged herein constitutes withholding overtime pay in violation of the Fair Labor Standards Act.

116.

Plaintiff has been injured by Defendant's actions and is entitled to all damages allowed under the Fair Labor Standards Act in an amount to be proven at trial in overtime compensation owed to her, including liquidated damages, as well as attorney's fees and costs of litigation in an amount to be proven at trial.

## COUNT V:
## VIOLATION OF FAMILY MEDICAL LEAVE ACT

### 117.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

### 118.

At all times relevant to this Complaint, Defendant was a covered, non-exempt employer pursuant to the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*.

### 119.

Plaintiff worked for a covered employer, had worked for the covered employer for at least twelve months, had at least 1,250 hours of service for Defendant during the twelve-month period immediately preceding the leave, and worked at a location where the employer had at least 50 employees within 75 miles.

### 120.

In September 2018, Plaintiff's doctors placed her on FMLA leave until December 5, 2018, to allow her to recover from her own serious medical condition.

### 121.

At the time that Plaintiff's FMLA leave was to begin, she had accrued in excess of twelve weeks of paid personal time off.

### 122.

As of the date of her request, Plaintiff was an eligible employee entitled to take FMLA leave for her own serious health condition that made her unable to perform the essential functions of her job, pursuant to the Family Medical Leave Act, and 29 C.F.R. § 825.113.

123.

Pursuant to the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise or the attempt to exercise, any right provided under this chapter." 29 U.S.C. § 2615(a)(1).

124.

Defendant engaged in prohibited conduct under the FMLA by interfering with, restraining, and denying Plaintiff's rights as provided by the Act.

125.

Defendant engaged in prohibited conduct by changing submitting a form SF-50 indicating that Plaintiff's employment was being changed from full-time to part-time status while Plaintiff was on FMLA leave.

126.

As a result of changing Plaintiff to part-time status, the number of hours that she was to be paid during her paid FMLA-protected leave was reduced and her fringe benefits were affected.

127.

Moreover, one of Plaintiff's supervisors further reduced the number of hours for which Plaintiff was to receive pay while on leave.

128.

Defendant's act of changing Plaintiff's employment status caused Plaintiff to receive significantly less money each week and sometimes receive nothing. Moreover, the change in Plaintiff's employment status had negative consequences to fringe benefits of her employment, such as the cancellation of her medical insurance coverage.

129.

Defendant's actions constitute direct interference with Plaintiff's rights as provided by the FMLA.

130.

As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff sustained loss of earnings, suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and the loss of professional reputation.

131.

Pursuant to 29 U.S.C. § 2617(a)(1)(A)(i), Defendant is liable for damages equal to the amount of wages, salary, employment benefits, and other compensation denied or lost to Plaintiff by reason of this violation, in an amount to be proven at trial.

132.

Pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), due to Defendants' willful violation of the FMLA and reckless disregard of whether Defendant's conduct was prohibited, Defendant is liable for an additional amount as liquidated damages, equal to the amount of any wages, salary, employment benefits, or other compensation denied or lost to Plaintiff by reason of the violation of the FMLA, in an amount to be proven at trial.

133.

Pursuant to 29 U.S.C. § 2617(a)(1)(A)(ii), Defendant is liable for interest on the amount described in Paragraph 132, *supra*, calculated at the prevailing rate, and in an amount to be proven at trial.

134.

Pursuant to 29 U.S.C. § 2617(a)(1)(B), Defendant is liable for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

135.

Pursuant to 29 U.S.C. § 2617(a)(3), the Court should award to Plaintiff, and assess against Defendant, reasonable attorney's fees and other costs of brining this action, in an amount to be proven.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Candameia Bender respectfully prays for the following relief:

1) That Summons and Process be issued to Defendant Mark T. Esper, as Secretary of the Department of Defense, and that said Defendant be served as provided by law;

2) That this matter be tried before a jury;

3) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count I for harassment based on race, and grant Plaintiff all relief allowable under Title VII of the Civil Rights Act of 1964;

4) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count II for discrimination based on sex, and grant Plaintiff all relief allowable under Title VII of the Civil Rights Act of 1964;

5)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count III for retaliation against Plaintiff for her participation in a protected activity, and any other relief allowable under Title VII of the Civil Rights Act of 1964;

6)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count IV for failure to pay overtime, and grant Plaintiff backpay, liquidated damages, and reasonable attorney's fees and costs of litigation, and any other relief allowable under the Fair Labor Standards Act;

7)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count V for violations of the Family Medical Leave Act, and grant Plaintiff all relief allowable under the Family Medical Leave Act;

8)      That the Court grant Plaintiff leave to amend her Complaint to include claims under the Americans with Disabilities Act once Plaintiff has exhausted her administrative remedies.

9)      For such other relief as this Court shall deem just and proper.

Respectfully submitted, this 6th day of September, 2019.


KENNETH E. BARTON III
Georgia Bar No. 301171
M. DEVLIN COOPER
Georgia Bar No. 142447
*Attorneys for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com
mdc@cooperbarton.com